# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ROSALINDA HARN, by Michael Colin Harn, Court Appointed Guardian for Rosalinda Harn,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY and JOHN DOES I THROUGH X whose true identities are unknown,<br><br>    Defendants. | Case No.: 1:12-cv-00633-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT SCOTTSDALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Docket No. 28)**<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 35)** |

Now pending before the Court are (1) Defendant Scottsdale Insurance Company's Motion for Summary Judgment (Docket No. 28), and (2) Plaintiff's Motion for Partial Summary Judgment (Docket No. 35). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. RELEVANT BACKGROUND

This case arises out of a dispute between Plaintiff Rosalinda Harn ("Plaintiff") and Spectra Productions, Inc. ("Spectra"), the details of which are described to follow. Spectra carried business liability insurance with Scottsdale Insurance Company ("Defendant"). *See* Stip., p. 1 (Docket No. 29). That dispute gave rise to a claim Plaintiff filed with the Idaho Human Rights Commission, followed by a suit filed in Idaho state court, in which Plaintiff sued Spectra and two of its employees. *See id.* Relevant here, Defendant denied any duty to defend

**MEMORANDUM DECISION AND ORDER - 1**

Spectra in the underlying state court action. *See id*. Ultimately, Plaintiff settled the state court action with Spectra by exchanging a covenant not to execute against Spectra for (1) a stipulated judgment in her favor, and (2) an assignment of any and all rights Spectra may have had against Defendant for denying a duty to defend Spectra under the insurance policy. *See id*. The instant action is based upon those claims, premised upon the following:

**A.      Factual Backdrop**

1.      Plaintiff is paralyzed, confined to a reclining wheelchair/gurney as a result of an April 4, 1986 automobile accident involving a drunk driver. *See* Pl.'s Compl., ¶ 19 (Docket No. 1, Att. 3). Plaintiff is unable to speak or move her body, but understands conversation and communicates by blinking her eyes. *See id*. at ¶ 20. Plaintiff is cared for by her husband and her legal guardian, Michael Colin Harn. *See id*. at ¶ 21. For over 20 years, Plaintiff has voluntarily attended events throughout the Pacific Northwest to dramatize for the public, in a first-hand fashion, the dangers and consequences of driving while under the influence of alcohol. *See id*. at ¶¶  23-25.

2.      On August 19, 2008, Plaintiff and her husband purchased tickets to attend the Western Idaho State Fair, so that Plaintiff could volunteer in the Exposition Building ("Expo Building") at the Mothers Against Drunk Driving ("MADD") Fair Booth. *See id*. at ¶ 26. To that end, Plaintiff was situated on a gurney and located near the MADD booth to demonstrate the severity of the consequences of drunk driving. *See id*. at ¶ 27.

3.      According to Plaintiff, Spectra leases space in the Expo Building from Ada County (the owner of the Western Idaho Fairgrounds); in turn, Spectra leases spaces to vendors. *See id*. at ¶ 28. Plaintiff contends that, for all practical purposes, Spectra operates and has control of the Expo Building during the Western Idaho State Fair. *See id*. at ¶ 29.

**MEMORANDUM DECISION AND ORDER - 2**

4.      Plaintiff alleges that while she was volunteering at the MADD booth, Spectra Supervisor Carla Armentrout approached her and her husband and said: "Please take that woman [referring to Plaintiff] out of here . . . . I want that woman off the premises." Armentrout allegedly told Mr. Harn that Plaintiff was "too graphic." *Id*. at ¶ 30. When Mr. Harn questioned why, Plaintiff claims Ms. Armentrout responded: "Because she [referring to Plaintiff] is too graphic and other customers are complaining." *Id*. at ¶ 33. Mr. Harn objected and initially refused to leave. *See id*. at ¶¶ 33-39. Eventually, Plaintiff and her husband left the Western Idaho Fairgrounds because they did not feel welcome there. *See id*. at ¶ 40.

## B.      Plaintiff's Complaint with the Idaho Human Rights Commission

5.      On August 21, 2008, Plaintiff filed a complaint against Spectra, containing a "Charge of Discrimination," with the Idaho Human Rights Commission (the "IHRC Complaint"). *See* Stip., p. 3, ¶ 3 (Docket No. 29). In the charge, Plaintiff claimed that she was "discriminated against based on my being confined to a wheelchair because I am paralyzed." IHRC Compl., p. 2, attached as Ex. 2 to Stip. (Docket No. 29, Att. 1).

6.      On December 1, 2008, Spectra tendered defense of the IHRC Complaint to Defendant. *See* Stip., p. 3, ¶ 6 (Docket No. 29).[1]

7.      On December 10, 2008, Defendant denied Spectra's tender. *See id*. at p. 3, ¶ 7; *see also* 12/10/08 Ltr., attached as Ex. 5 to Stip., p. 8 (Docket No. 29, Att. 2) ("The alleged discriminatory conduct does not meet the policy definition of an 'occurrence' or an offense resulting in 'personal or advertising injury.' Neither do they meet the policy definition of 'bodily injury' or 'property damage.'").

---

[1] It is undisputed that Defendant issued Commercial General Liability Policy No. CLS1444137 to Spectra (the "Policy"), effective October 21, 2007 through October 21, 2008. *See* Stip., p. 3, ¶ 1 (Docket No. 29). Additionally, around January 25, 2008, Defendant issued Endorsement No. 1, which was effective October 21, 2007. *See id*. at p. 3, ¶ 2.

**MEMORANDUM DECISION AND ORDER - 3**

## C. Plaintiff's Underlying State Court Complaint

8. On October 19, 2009, Plaintiff filed a complaint against Spectra and its employees in Idaho state court (the "State Court Complaint"), asserting two causes of action: discrimination/loss of civil rights and intentional infliction of emotional distress. *See* Stip., p. 3, ¶ 3 (Docket No. 29); *see also* Pl.'s Compl., attached as Ex. 3 to Stip. (Docket No. 29, Att. 2).

9. On January 5, 2010, Spectra tendered defense of the State Court Complaint to Defendant. *See* Stip., p. 3, ¶ 8 (Docket No. 29).

10. On January 7, 2010, Spectra requested that Defendant revise its coverage decision set forth in its December 10, 2008 denial of Spectra's tender of the IHRC Complaint. *See id.* at p. 4, ¶ 9; *see also* 1/7/10 Ltr., attached as Ex. 7 to Stip., p. 1 (Docket No. 29, Att. 2) (". . . it is [Spectra's] view that the [P]olicy provides both the duty to defend and the duty to indemnify the claims the Plaintiff makes in the Complaint.").

11. On March 26, 2010, Defendant reaffirmed its denial of Spectra's tender of defense and denied coverage, accordingly, for Plaintiff's State Court Complaint. *See* Stip., p. 4, ¶ 10 (Docket No. 29); *see also* 3/26/10 Ltr., attached as Ex. 8 to Stip., p. 6 (Docket No. 29, Att. 2) ("Scottsdale is unable to find coverage for the Complaint, because Plaintiff does not allege any covered 'personal and advertising injury' offense. Certain exclusions also may apply.").

12. Spectra did not provide any additional pleadings or alleged facts in response to Defendant's denial of Spectra's tender of defense. *See* Stip., p. 4, ¶ 11 (Docket No. 29).

## D. Settlement of Underlying State Court Complaint

13. On August 5, 2011, Spectra requested Defendant's permission to assign its claims to Plaintiff. *See* Stip., p. 4, ¶ 12 (Docket No. 29); *see also* 8/5/11 Ltr., attached as Ex. 9 to Stip.

(Docket No. 29, Att. 2) (" . . . Spectra requests that Scottsdale provide it with written consent to transfer its rights and duties under the Policy to the Plaintiff . . . as part of its settlement of her claims with Spectra.").

14.     On August 22, 2011, Defendant declined Spectra's request for permission to assign rights and duties under the Policy to Plaintiff.  *See* Stip., p. 4, ¶ 13 (Docket No. 29); *see also* 8/22/11 Ltr., attached as Ex. 10 to Stip. (Docket No. 29, Att. 2).  A subsequent e-mail exchange between counsel for Spectra and Defendant did not change Defendant's previous decision not to assign its rights and duties under the Policy to Plaintiff.  *See* Stip., p. 4, ¶ 14 (Docket No. 29); *see also* Ex. 11 to Stip. (Docket No. 29, Att. 2).

15.     On December 2, 2011, Spectra entered into a "Settlement Agreement" that included (1) a consent to judgment in favor of Plaintiff in the amount of $306,451.61, and (2) assignment to the Plaintiff of Spectra's rights under Defendant's Policy.  *See* Stip., p. 4, ¶¶ 15-16 (Docket No. 29); *see also* Exs. 12-13 to Stip. (Docket No. 29, Att. 3).

16.     In exchange for Spectra consenting to judgment and assigning its rights to Plaintiff, Plaintiff agreed not to execute on the judgment against Spectra.  *See* Stip., p. 4, ¶ 17 (Docket No. 29); *see also* Ex. 14 to Stip. (Docket No. 29, Att. 3).

17.     In accordance with the agreements reached between Plaintiff and Spectra in regard to the State Court Complaint, the state court entered judgment against Spectra.  *See* Stip., p. 4, ¶ 18 (Docket No. 29); *see also* Ex. 15 to Stip. (Docket No. 29, Att. 3).

**E.     This Coverage Action and the Parties' Cross Motions for Summary Judgment**

18.     On September 4, 2012, Plaintiff filed this declaratory relief action; on January 18, 2013, Defendant removed it to this Court.  *See* Stip., pp. 4-5, ¶¶ 19-20 (Docket No. 29).

19.     On December 16, 2013, Defendant moved for summary judgment, arguing, first, that it properly denied coverage for Plaintiff's allegations because neither the IHRC Complaint nor the State Court Complaint alleged any "bodily injury" resulting from an "occurrence" under the Coverage A section of the Policy; and, second, that Plaintiff's allegations did not fall within the Coverage B "personal and advertising injury" section of the Policy. *See* Def.'s Mem. in Supp. of MSJ, p. 2 (Docket No. 28, Att. 1).

20.     On January 13, 2014, Plaintiff moved for partial summary judgment (and, in doing so, opposed Defendant's summary judgment efforts), arguing that Defendant had a duty to defend Spectra in the underlying state court action pursuant to its Policy, based upon the allegations within the State Court Complaint . *See generally* Pl.'s Mem. in Supp. of MPSJ (Docket No. 33).

21.     Plaintiff and Defendant agree that their cross motions for summary judgment shall be limited to the following issue:

> Did Defendant Scottsdale Insurance Company have a duty to defend Spectra Productions and its employee/agent Defendants in [the underlying state court action] based upon the allegations contained in the operative complaint in that action, without consideration at this time of whether or not the Limitation Of Coverage To Designated Premises Or Project Endorsement in the Policy and Endorsement No. 1 apply separate to preclude coverage?

Stip., p. 3 (Docket No. 29).

## II.  DISCUSSION

### A.     Motions for Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence in a light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that

**MEMORANDUM DECISION AND ORDER - 6**

there is no material factual dispute, and the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *See Celotex*, 477 U.S. at 324. Material facts which would preclude summary judgment are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The relevant substantive law will determine which facts are material for purposes of summary judgment. *See id.*

Where, as here, both parties move for summary judgment, the summary judgment standard does not change, and the court must evaluate each party's motion on the merits. *See Farm Bureau Ins. Co. of Idaho v. Kinsey*, 234 P.3d 739, 742 (Idaho 2010) (citation omitted); *see also Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009) (applying traditional summary judgment standards to cross-motions for summary judgment in ERISA benefits denial case). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing there is no genuine issue of material fact by demonstrating an "absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party establishes an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosp. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. *See Celotex*, 477 U.S. at 323.

Where the moving party instead bears the burden of proof on an issue at trial, "it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. That is, the moving party must prevent evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Once it

has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case." *Sabatino v. Liberty Life Assur. Co. of Boston*, 286 F. Supp. 2d 1222, 1229 (N.D. Cal. 2003) (citing *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994)).

**B.      Insurance Contracts Under Idaho Law**

　　1.      <u>Interpreting Insurance Contracts</u>

　　Insurance policies are contracts between the insurer and the insured. *See Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 392 (Idaho 2010) (citing *Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 280 (Idaho 2008)).  Whether an insurance policy is ambiguous is a question of law over which the court exercises free review. *See Armstrong v. Farmers Ins. Co. of Idaho*, 205 P.3d 1203, 1205 (Idaho 2009) (citing *Purvis v. Progressive Cas. Ins. Co.*, 127 P.3d 116, 119 (Idaho 2005)) (citation omitted).  If the court finds the policy language to be unambiguous, the court is to construe the policy as written.  "The court by construction cannot create a liability not assumed by the insurer nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Id.*  "Unless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage – as opposed to the meaning derived from legal usage – in order to effectuate the intent of the parties." *Id.*  (quoting *Howard v. Ore. Mut. Ins. Co.*, 46 P.3d 510, 513 (Idaho 2002)).  Where there is an ambiguity in an insurance contract, special rules of construction apply to protect the insured. *See id.* at 1206 (citing *Hall*, 179 P.3d at 281).

　　In deciding whether a particular provision is ambiguous, the provision must be read within the context in which it occurs in the policy. *See Armstrong*, 205 P.3d at 1206 (citing

**MEMORANDUM DECISION AND ORDER - 8**

*Purvis*, 127 P.3d at 119).  An insurance policy provision is ambiguous if "it is reasonably subject to conflicting interpretations."  *North Pac. Ins. Co. v. Mai*, 939 P.2d 570, 572 (Idaho 1997). Because insurance contracts are adhesion contracts that are not typically subject to negotiation between the parties, any ambiguity that exists in the contract is construed most strongly against the insurer and in favor of the insured.  *See Armstrong*, 205 P.3d at 1206 (citing *Arreguin v. Farmers Ins. Co.*, 180 P.3d 498, 500 (Idaho 2008)).  Further, insurance contracts are to be construed "in a manner which will provide full coverage for the indicated risks rather than to narrow its protection."  *Smith v. O/P Transp.*, 918 P.2d 281, 284 (Idaho 1996).  "The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Arreguin*, 180 P.3d at 500.  At the same time, standardized contract language must necessarily be somewhat general, in anticipation of varying sets of the facts.  *See Axis Surplus Ins. Co. v. Lake CDA Dev.*, 2008 WL 4238966, *2 (D. Idaho 2008) (citing *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984)).

2.  Duties of Insurers to Defend

As a general matter, an insurer must defend a suit against the insured where the complaint alleges facts which, if true, would bring the case within the policy coverage.  *See Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440, 445 (Idaho Ct. App. 1984).  The allegations in the complaint are not to be read narrowly; instead, the court must look at the full breadth of the plaintiff's claim.  *See id*. at 446.  "'The pleadings are malleable, changeable and amendable . . .'" *Id*. (quoting *Standard Oil Co. of Ca. v. Hawaiian Ins. & Guar. Co., Ltd.*, 634 P.2d 123, 129 (Haw. 1981)).  "An insurer's 'duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be

covered by the insured's policy.'" *County of Boise v. Idaho Counties Risk Mgmt. Program, Underwriters*, 265 P.3d 514, 517 (Idaho 2011) (quoting *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1260-61 (Idaho 2002)).  A duty to defend exists if there is a "genuine dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts." *Black v. Fireman's Fund Am. Ins. Co.*, 767 P.2d 824, 830 (Idaho Ct. App. 1989).

**C.      Applicable Policy Provisions**

      Defendant argues there was never any potential for coverage under the Policy.  *See* Def.'s Mem. in Supp. of MSJ, pp. 9-18 (Docket No. 28, Att. 1).  That is, Defendant submits that it had no duty to defend Spectra because Plaintiff's allegations did not trigger Coverage A of the Policy, in that (1) emotional distress does not constitute "bodily injury" (as that term is defined in the Policy); (2) intentional infliction of emotional distress is not an "occurrence" (as that term is defined in the Policy); and (3) the expected or intended injury exclusion applies regardless. *See id.* at pp. 9-13.  Defendant additionally submits that it had no duty to defend Spectra because Plaintiff's allegations did not trigger Coverage B of the Policy because Coverage B "is limited to offenses specifically enumerated in the Policy's definition of personal and advertising injury" and emotional distress does not constitute personal injury (as that term is defined in the Policy). *See id.* at 13-18.

      These two insuring provisions central to this dispute – Coverage A and Coverage B – read in pertinent part:

      1.      Coverage A

      **SECTION I - COVERAGES**

      **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**MEMORANDUM DECISION AND ORDER - 10**

**1.     Insuring Agreement**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  . . . .

   **b.**     This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)**     The "bodily injury" or "property damage" occurs during the policy period . . . .

**2.     Exclusions**

   This insurance does not apply to:

   **a.     Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.  . . . .

**SECTION V - DEFINITIONS** . . . .

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  . . . .

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  . . . .

Ex. 1 to Stip., pp. 1-2, 12, 14 (Docket No. 29, Att. 1).

   2.     <u>Coverage B</u>

**SECTION I - COVERAGES** . . . .

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  . . . .

**SECTION V - DEFINITIONS** . . . .

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses: . . . .

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy . . . .

Ex. 1 to Stip., pp. 5, 14  (Docket No. 29, Att. 1).

**D.      Defendant's Motion for Summary Judgment (Docket No. 28)**

    1.    <u>Defendant is Not Entitled to Summary Judgment Regarding Defendant's Alleged Duty to Defend Under Coverage A</u>

For Defendant's Coverage A-related argument to prevail at this stage of the litigation, it must be the case that (1) Plaintiff's allegations in the underlying state court action did not assert a claim for "bodily injury" under the Policy, (2) Plaintiff's alleged bodily injury (even when assuming its existence) was not caused by an "occurrence" under the Policy, or (3) Plaintiff's alleged bodily injury (even when assuming its existence) was expected and/or intended and,

**MEMORANDUM DECISION AND ORDER - 12**

thus, excluded under the Policy.  Questions of fact, however, preclude such findings as a matter of law.

       *a.*       *The Term "Bodily Injury," as Used in the Policy and Applied to the Facts of This Case, is Ambiguous*

"Bodily injury," under the Policy, means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Ex. 1 to Stip., p. 12 (Docket No. 29, Att. 1).  Pointing to *Reyerson v. Nat'l Union Fire Ins. of Pittsburgh*, 2008 WL 974922 (D. Idaho 2008), Defendant asserts that Plaintiff's alleged emotional distress, absent physical manifestations, does not fall within the Policy's definition of "bodily injury."  *See* Def.'s Mem. in Supp. of MSJ, pp. 9-11 (Docket No. 28, Att. 1).

However, Defendant's reliance upon the holding in *Reyerson* goes too far.  There, District Judge Winmill considered whether the term "bodily injury" – which was undefined by the insurance policy in his case – included emotional distress with attendant physical manifestations.  Not finding a clear answer under Idaho law, and encountering conflicting case law from other jurisdictions, Judge Winmill concluded that:

> [T]he term "bodily injury," as used in the National Union policy, is ambiguous.  It is unclear whether "bodily injury" applies to psychological and/or emotional injuries resulting in physical manifestation.

*Id*. at *4.  More to the point, Reyerson's holding dealt with whether the policy's undefined term of "bodily injury" included a claim of emotional distress where physical manifestations were claimed to be present, but it did *not* consider whether physical manifestations were required to accompany emotional distress to constitute "bodily injury" as an overarching rule under Idaho insurance law.  *Reyerson*, therefore, is of limited import.

**MEMORANDUM DECISION AND ORDER - 13**

Additionally, unlike *Reyerson*, the Policy here defines "bodily injury" to include, among other things, "sickness." However, "sickness" is a term not further defined in the Policy. Does "sickness" includes emotional distress (even if unaccompanied by physical manifestations)? This more nuanced question has been considered by the Idaho Supreme Court in a somewhat-similar insurance coverage context, in which the court posed the issue as: "This [Black's Law Dictionary] definition [of "sickness"] leaves us with a question of whether "sickness" includes conditions that are only emotional and not physical." *City of Boise v. Planet Ins. Co.*, 878 P.2d 750, 755 (Idaho 1994).

*Planet Insurance* involved a comprehensive general liability policy purchased by the City of Boise, underwritten by the defendant insurance company. Following a demotion, a former deputy chief in the city fire department sued the city, the mayor, and the fire chief. He said that his demotion was wrongful and that the complaints he had raised about the city fire chief, which he claimed led to his demotion, were constitutionally-protected free speech. A jury awarded damages on his claims for lost earnings and emotional distress, finding that his demotion had been in retaliation for constitutionally-protected free speech. Planet Insurance had denied coverage for the emotional distress damages under a policy exception that excluded "personal injury to or sickness, disease or death of any employee of the **Insured** arising out of and in the course of his employment by the **Insured**" (emphasis in original). "Personal injury" was separately defined in the policy as "[b]odily injury, sickness, disease, disability, shock, fright, mental anguish and mental injury, including death at any time resulting therefrom." The court held that as to the damages for emotional distress, and notwithstanding the policy's general definition for "personal injury," an ambiguity existed regarding that use of the term "personal injury" in the policy's exclusionary clause. In the clause excluding coverage, the court

**MEMORANDUM DECISION AND ORDER - 14**

specifically emphasized, the term "personal injury" did not appear in the same bold face type as other defined terms appearing in the same location. The takeaway from that difference in context, according to the Court:

> [P]ersuades us that the meaning of "personal injury" in the exclusion is not intended to be the same as personal injury, as defined in the liability coverage portion of the policy. Taking all these circumstances together, we conclude that when a term appears in bold face type in the liability coverage, it has the meaning ascribed to it in the definition section. In other cases where a term that is defined by the policy when appearing in bold face type appears in another face type, as is the case with "personal injury" in the employee personal injury exclusion, the term is ambiguous because it might be read to be defined as it would be if in bold face type, or it might be read to be defined in the way it is in common usage. Therefore, it is reasonably subject to conflicting interpretation and is ambiguous.

*Id*. at 754 (internal quotation marks and citations omitted). Going further, and more relevant to this action, the court also pointed out that the policy did not define "sickness" and, after thoroughly discussing several of its possible definitions, concluded that the term "sickness" "is reasonably subject to conflicting interpretations concerning the inclusion of emotional distress, and, therefore, is ambiguous." *Id*. at 755.[2]

With all this in mind, this Court concludes that it is ambiguous whether or not the term "bodily injury," as used in the Policy, embraces Plaintiff's allegations of emotional distress. As a result, Defendant's Motion for Summary Judgment is denied in this respect.

> b. *The Term "Occurrence," as Used in the Policy and Applied to the Facts of This Case, is Ambiguous*

Defendant argues alternatively that even if Plaintiff alleged a "bodily injury" triggering threshold coverage under the Policy, there was still no duty to defend Spectra because Plaintiff's alleged emotional distress was not caused by an "occurrence" under the Policy. *See* Def.'s Mem.

---

[2] Because the court was bound to construe the employee personal injury exclusion strictly against the insurer, it further held that the term "sickness" did not to include emotional distress so as to not be excluded from coverage and, thus, afford coverage to the insured. *See Planet Ins.*, 878 P.2d at 755; *see also* Pl.'s Opp. to Def.'s MSJ, p. 9, n.4 (Docket No. 33).

**MEMORANDUM DECISION AND ORDER - 15**

in Supp. of MSJ, pp. 11-12 (Docket No. 28, Att. 1). According to Defendant, this conclusion is inescapable because Plaintiff's State Court Complaint makes a claim for *intentional* infliction of emotional distress which, Defendant contends, by its very terms could not involve accidental conduct (keeping in mind that the Policy defines "occurrence" as "an accident" (*see supra*)). *See id.*

There is a logical path to Defendant's argument, but it places too much emphasis on Plaintiff's stated claim for relief in the State Court Complaint. Defendant is correct that the second count in the State Court Complaint is a claim for intentional infliction of emotional distress. *See* Pl.'s Compl., p. 7, attached as Ex. 3 to Stip. (Docket No. 29, Att. 2). However, the fact that certain conduct may have been allegedly intentional – or, even, reckless[3] – does not *ipso facto* mean that a related accident (or "occurrence" under the Policy) could not have taken place, owing to such conduct. For instance, the Idaho Supreme Court has ruled upon the term "accident" in the context of a general liability policy, stating that an "accident is an unexpected event which is the result of unintentional conduct or an intentional act which results in unexpected consequences." *State Farm Fire & Cas. Co. v. Doe*, 946 P.2d 1333, 1336 (Idaho 1997). Applying this definition here, the allegations regarding the conduct of Spectra's employees do not mean as a matter of law that Plaintiff's alleged injury was the result of an accident. Instead, the record is uncertain as to what the Spectra employees intended to accomplish from their conduct – particularly if such conduct was reckless, as Plaintiff

---

[3] Under Idaho law, to recover on a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the conduct and the emotional distress, and (4) the emotional distress was severe. *See Nation v. State Dep't of Correction*, 158 P.3d 953, 968 (Idaho 2007). Plaintiff alleged that Spectra's employees acted intentionally *or* recklessly toward Plaintiff – allegations which track the alternate threshold elements of the tort. *See* Pl.'s Compl., ¶ 48, attached as Ex. 3 to Stip. (Docket No. 29, Att. 2) ("The conduct of the Defendants as aforesaid was intentional or reckless.").

alternatively alleged.[4]  There is not a large amount of room to maneuver upon such facts, but the

space that is there prevents this Court from concluding, as a matter of law, that Plaintiff's alleged

emotional distress is not an "occurrence" under the Policy.

With all this in mind, it is unclear whether or not the conduct leading up to Plaintiff's

alleged injury was an accident and, thus, an "occurrence" under the Policy.  As a result,

Defendant's Motion for Summary Judgment is denied in this respect.[5]

---

[4]  In a case of recent vintage, the Idaho Supreme Court has defined "reckless misconduct" as "a form of negligence that involves both intentional conduct and knowledge of a substantial risk of harm."  *Carillo v. Boise Tire Company, Inc.*, 274 P.3d 1256, 1266 (Idaho 2012); *see also id*. (". . . reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. . . . [T]he actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.").  In other words, reckless conduct does not involve an actual intent to inflict a particular type of harm and, in kind, an expectation of or intent for that same harm; as a consequence, under the nuances of Idaho law as set out by the Idaho appellate courts, it is possible for the intentional infliction of emotional distress to be the product of an accident.  *But cf. O'Neil v. Vasseur*, 796 P.2d 134, 141 (Idaho Ct. App. 1990) ("To recover damages for the intentional infliction of emotional distress, O'Neil must show that Vasseur and Gissel's conduct was so extreme and outrageous they intended that O'Neil and his family would experience emotional difficulties."); *Podolan v. Idaho Legal Aid Servs.*, 854 P.2d 280, 290 (Idaho Ct. App. 1993) ("The tort[ ] of . . . intentional infliction of emotional distress require[s] intent to commit the tort. . . .  Legal Aid . . . did not intend to cause them emotional distress.").

[5]  Defendant relies on *Blue Cross of Idaho Health Serv., Inc. v. Atlantic Mut. Ins. Co.*, 2011 WL 162283 (D. Idaho) to argue that coverage does not exist because intentional infliction of emotional distress cannot be accidental.  *See* Def.'s Mem. in Supp. of MSJ, pp. 11-12 (Docket No. 28, Att. 1).  However, this argument glosses over the difference between coverage and an insurer's duty to defend – the latter being the sole issue before this Court.  *See id*. at *17 ("If the allegations in the complaint allege intentional acts not covered by the policy, the court may find the policy did not provide coverage *even though it may also conclude that the insurer was required to provide a defense*.") (emphasis added).  In fact, while the ruling in *Blue Cross* found that "the allegation of intentional infliction of emotional distress contained in the [underlying] [c]omplaint is not covered by the Policy [because the complaint "alleges intentional, rather than accidental, conduct"] . . ., it also explicitly "ma[de] no finding concerning [the defendant's] duty to defend with respect to the intentional infliction of emotional distress claim."  *Id*.

**MEMORANDUM DECISION AND ORDER - 17**

c.      The *"Expected or Intended Injury" Exclusion, as Used in the Policy and*
                        *Applied to the Facts of This Case, is Ambiguous*

        "Bodily injury" that is "expected or intended" (from the insured's standpoint) is not

covered by the Policy.  *See* Ex. 1 to Stip., p. 2 (Docket No. 29, Att. 1).  Citing non-Idaho case

law, Defendant contends that, regardless of whether Plaintiff alleged a "bodily injury" caused by

an "occurrence" under the Policy, Plaintiff's alleged emotional distress must have been expected

or intended (and therefore excluded), on the theory that the Spectra employee's conduct (as

alleged in Plaintiff's State Court Complaint) was either intentional or reckless, as a part of

Plaintiff's intentional infliction of emotional distress claim.  *See* Def.'s Mem. in Supp. of MSJ,

pp. 12-13 (Docket No. 28, Att. 1).

        As one would expect, where an insurance policy excludes certain types of claims from

coverage, a duty to defend those claims does not arise.  *See, e.g.*, *Dave's, Inc. v. Linford*, 291

P.3d 427, 432-33 (Idaho 2012) (finding no duty to defend contractor's action against homeowner

brought as breach of contract claim "because of . . . property damage" provision "to which this

coverage applies" because policy excluded property damage to home); *County of Boise*, 265 P.3d

at 517 (finding no duty to defend where lawsuit arose out of or was connected with land use

regulation or planning and zoning activities which were explicitly excluded under policy).

        Here, to find that the Policy's "Expected or Intended Injury" exclusion applies, this Court

must again be convinced that, in insisting that Plaintiff leave the Expo Building, Spectra's

employees expected or intended for Plaintiff to suffer emotional distress.  The record does not

permit that ultimate conclusion as a matter of law because questions of fact preclude a finding

that Spectra's employees – even if acting either intentionally or recklessly as Plaintiff alleges –

**MEMORANDUM DECISION AND ORDER - 18**

had any particular expectations (one way or the other) by way of Plaintiff's physical/emotional reaction.  Among other things, the record does not contain information about what the Spectra employees may have understood about the nature (and extent) of Ms. Harn's cognitive limitations and other disabilities.  *See supra*.  There are competing details, so to speak, and at the very least, under Idaho law, recklessly-caused injuries are not excluded under the Policy's "Expected or Intended Injury" exclusion

With all this in mind, it is unclear whether Plaintiff's alleged emotional distress was either expected or intended and, likewise, whether the Policy's "Expected or Intended Injury" exclusion applies to exclude Plaintiff's claims.  As a result, Defendant's Motion for Summary Judgment is denied in this respect.

2.   Defendant is Not Entitled to Summary Judgment Regarding Defendant's Alleged Duty to Defend Under Coverage B

Defendant's coverage obligations under Coverage B of the Policy is limited to "personal and advertising injury," meaning "injury, including consequential 'bodily injury,' arising out of" certain delineated "offenses," such as:

- "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor";

- "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"; or

- "Oral or written publication, in any manner, of material that violates a person's right of privacy . . . ."

Ex. 1 to Stip., pp. 5 & 14 (Docket No. 29, Att. 1).  Defendant argues that it had no duty to defend Spectra under the Policy's Coverage B obligations because Plaintiff's allegations do not speak to

any of these "offenses." *See* Def.'s Mem. in Supp. of MSJ, pp. 13-18 (Docket No. 28, Att. 1).

The Court is not so persuaded.[6]

>    *a.*     *The "Wrongful Eviction From, Wrongful Entry Into, or Invasion of the Right of Private Occupancy" Provision, as Used in the Policy and Applied to the Facts of This Case, is Ambiguous*

Defendant is firmly of the mind that "[n]either a volunteer nor a paying customer of a fair is a tenant subject to a wrongful eviction nor a person with a right of private occupancy." *Id.* at p. 14. However, the precise scope of coverage afforded by the phrase "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy" has never been interpreted by an Idaho state court or a federal court applying Idaho law. Although Defendant's self-serving interpretation of such words is one possible sensible reading, it is not the only sensible way to consider and dissect them.

On the one hand, it is indeed possible to construe such a term as limiting the interference of an individual's possessory interest in real property such that, while Plaintiff may have had permission to legally be on the Expo Building's premises due to her having purchased a ticket for admission, she still did not have any actual possessory interest in the Expo Building itself. In other words, because Plaintiff was not a *tenant*, the argument goes, she could not have been evicted and she could not have had a right of private occupancy; and, accordingly, no duty to defend could have arisen under the terms of the Policy. *See, e.g., Century Sur. Co. v. Seductions, LLC*, 609 F. Supp. 2d 1273 (S.D. Fla. 2009) (holding that patron of nightclub was business

---

[6] As before, Defendant also argues that "emotional distress is found nowhere in the definition of personal injury." Def.'s Mem. in Supp. of MSJ, p. 13 (Docket No. 28, Att. 1). However, because (1) "personal injury" includes "bodily injury," and (2) "bodily injury" may include emotional distress as previously discussed (*see supra*), this argument is without merit. Said another way, this portion of the Memorandum Decision and Order (and, even Defendant's Coverage B-related arguments) presumes the existence of personal/bodily injury.

invitee without even temporary possessory interest in premises as required for his forcible removal by security to constitute wrongful eviction under nightclub's comprehensive general liability insurance policy); *STK Enters., Inc. v. Crusader Ins. Co.*, 14 P.3d 638 (Or. 2000) ("A customer or prospective customer of a commercial establishment is a licensee or invitee of the owner; the customer does not ordinarily have a possessory interest in the real property. Thus, limiting of coverage to claims brought by those with possessory interests would exclude the coverage of the claims in this case.").

On the other hand, it is possible to construe such a term in a more pliant way – namely, that it merely limits the removal of a person who has an understood right to be in a place from which she is ultimately removed. In this interpretation, Plaintiff, having bought a ticket to attend the fair, purchased a temporary right of occupancy for that purpose and on those premises, giving rise to an insurer's duty to defend once she is allegedly improperly dispossessed of her absolute right to otherwise remain on the property. *See, e.g.*, *Rockgate Mgmt. Co. v. CGU Ins., Inc./PG Ins. Co. of New York*, 88 P.3d 798 (Kan. App. 2004) (suggesting that, where someone reserves and is provided hotel room but is subsequently wrongfully evicted, condition precedent of "occupancy" exists for similar coverage provision to apply); *Ins. Co. of N. Am. v. Forrest City Country Club*, 819 S.W.2d 296 (Ark. 1991) (finding similar coverage provision as possibly meaning simply the process of being forcefully removed or ejected from a particular location).

This policy provision is, accordingly, susceptible to more than one reasonable construction, and therefore is ambiguous. Accordingly, the Court cannot rule as a matter of law that Plaintiff's allegations categorically do not allege a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises." Defendant's Motion for Summary Judgment is denied in this respect.

**MEMORANDUM DECISION AND ORDER - 21**

> **b.** *The (1) Defamation/Disparagement and (2) Privacy Right Violation Provisions, as Used in the Policy and Applied to the Facts of This Case, Are Not Ambiguous and Do Not Apply*

Plaintiff has never formally alleged (in her IHRC Complaint or in her State Court Complaint) that Spectra's employees either defamed or otherwise disparaged her or violated her right of privacy. Not surprisingly, Defendant argues that the defamation/disparagement and privacy right violation provisions within Coverage B were never triggered and, ergo, no associated duty to defend ever arose. *See* Def.'s Mem. in Supp. of MSJ, pp. 15-18 (Docket No. 28, Att. 1). In response, Plaintiff offers a loosely constructed argument that the Spectra employees' alleged statements *could have* amounted to slander, disparagement of services, or a violation of her right to privacy. *See* Pl.'s Opp. to Def.'s MSJ, pp. 17-19, 21-22 (Docket No. 33).

The Policy's Coverage B, however, cannot under any reasonable analysis reach such suppositions. The Policy does provide coverage in situations where, for example, defamation or a right of privacy violation is actually asserted as a basis for a claim, but not in situations where such claims could *possibly* exist. *See, e.g.*, *Nichols v. Am. Emp'rs Ins. Co.*, 412 N.W.2d 547, 550-51 (Wis. App. 1987) ("[W]e read the insurance policy as contemplating defense of defamation suits, not suits claiming damages where a defamatory statement may be involved.... We conclude that because the nature of the claim was not a defamation action by the third party, the simple fact that a defamatory statement is part of a proceeding does not bring the case within the insurance coverage."). Here, there are no such claims from which related duties to defend could attach. A holding to the contrary would force an insurer to become an insured's advocate, imposing a duty to think of all possible ways to trigger coverage (including theories altogether not contemplated or asserted by the insured herself).

**MEMORANDUM DECISION AND ORDER - 22**

Plaintiff's allegations are too scant to invoke the defamation/disparagement or privacy right violation provisions of the Policy. Therefore, neither applies to provide coverage here. Defendant's Motion for Summary Judgment is granted in these limited respects.

**E.      Plaintiff's Motion for Partial Summary Judgment (Docket No. 35)**

The Policy is ambiguous as to coverage under Coverage A, *i.e.*, (1) whether "bodily injury" includes Plaintiff's alleged emotional distress, (2) whether Plaintiff's alleged emotional distress was the result of an "occurrence," and (3) whether Plaintiff's alleged emotional distress was expected or intended and therefore excluded; and, under Coverage B, whether Plaintiff's alleged emotional distress arose out of "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises" that Plaintiff occupied. *See supra*. Where such ambiguity exists, Idaho law requires that the Policy's terms be construed as a matter of law in favor of Plaintiff, the insured (following the assignment of rights from Spectra to Plaintiff), and against Defendant, the insurer. *See supra*. The nature of that tilting of the table in favor of the insured was described in a recent decision from this District:

> Based on these decisions, the Court finds that although the Idaho Supreme Court has used some imprecise language in describing the standard for interpreting insurance contracts, its recent decisions confirm that "all ambiguities in an insurance policy are to be resolved against the insurer." Moreover, the Court interprets the Idaho Supreme court's decisions to require that the Court, not a jury, resolve an ambiguity in favor of the insured. . . . . It would make little sense for a court to make the initial determination on whether an insurance policy is ambiguous – which the Idaho Supreme Court unequivocally states the court must do – and then if the court finds that it is ambiguous, ask the jury to resolve that ambiguity, but with an instruction that it must do so by resolving it in favor of the insured. Because ambiguities *must* be resolved in favor of the insured, it makes much more sense for the court to simply make that determination if and when it determines that the contract is ambiguous.

*Wells Cargo, Inc. v. Transport Ins. Co.*, 2012 WL 3112009, *5 (D. Idaho 2012) (emphasis in original). As a result, this Court determines that the allegations contained in the underlying State

Court Complaint gave rise to a duty on Defendant's part to defend Spectra against Plaintiff's allegations. Plaintiff's Motion for Partial Summary Judgment is therefore granted.[7]

## III. ORDER

For the foregoing reasons, it is HEREBY ORDERED that (1) Defendant's Motion for Summary Judgment is DENIED;[8] and (2) Plaintiff's Motion for Partial Summary Judgment is GRANTED.

DATED: **September 22, 2014**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[7] Though immaterial here, Plaintiff's argument that Defendant either waived any coverage defense or is estopped from now denying coverage is misplaced. *See* Pl.'s Opp. to Def.'s MSJ, p. 10 (Docket No. 33) ("Finally, Scottsdale did not advise [Spectra] that it was denying coverage on the grounds that severe emotional distress was not 'bodily injury.'"). On December 10,2008, Defendant stated: "The alleged discriminatory conduct does not meet the policy definition of an 'occurrence' or an offense resulting in 'personal or advertising injury.' Neither do they meet the policy definition of 'bodily injury' or 'property damage.'" *See* 12/10/08 Ltr., attached as Ex. 5 to Stip., p. 8 (Docket No. 29, Att. 2).

[8] To be clear, while this Memorandum Decision and Order finds that Defendant had a duty to defend Spectra (as that issue has been stipulated to by the parties), it does so based upon Coverage A of the Policy and the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy" provision within Coverage B of the Policy only. The defamation/disparagement and privacy right violation provisions within Coverage B of the Policy do not apply.

**MEMORANDUM DECISION AND ORDER - 24**